

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 14, 2014**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 13-32683-bjh-7 |
| ATLAS FINANCIAL MORTGAGE, INC., | § | |
| | § | (Chapter 7) |
| DEBTOR. | § | |

| | | |
|---|---|---|
| SCOTT M. SEIDEL, TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Adversary No. 13-03233-bjh |
| | § | |
| JAMES WARNER; JAMES WARNER | § | |
| d/b/a A-ADVANTAGE CO. REMODELING; | § | Related to Dkt. Nos. 12 & 15 |
| ATLAS FINANCIAL SERVICES, LLC; | § | |
| A-ADVANTAGE AUTO GROUP, INC.; | § | |
| A-AUTO CLUB, LLC; and | § | |
| ATLAS LEASING, LLC, | § | |
| | § | |
| Defendants. | § | |

**<u>MEMORANDUM OPINION AND ORDER DENYING PREJUDGMENT
WRIT OF ATTACHMENT AND GRANTING PRELIMINARY
INJUNCTION</u>**

Before the Court is the *Motion for Preliminary Injunction and Prejudgment Writs of Attachment Against James Warner* (the "**Motion**") filed by Scott M. Seidel, chapter 7 trustee (the "**Trustee**") of the bankruptcy estate of Atlas Financial Mortgage, LLC (the "**Debtor**").  The Motion was heard on December 3, 2013 (the "**Hearing**").[1]  At the conclusion of the Hearing, the Court granted the Motion, in part, as reflected in the *Preliminary Injunction Against James Warner* [Dkt. No. 27] entered on December 9, 2013.  The Court also requested further briefing from the parties with respect to the Trustee's request for either (i) a prejudgment writ of attachment against James Warner's ("**Warner**") non-exempt real property holdings (the "**Additional Properties**"), or (ii) a preliminary injunction prohibiting any transfer of the Additional Properties pending the outcome of the trial of this adversary.  The last of those briefs is now on file and the remainder of the Motion is ripe for ruling.  For the reasons explained below, the Court will deny the Trustee's request for the issuance of a prejudgment writ of attachment against the Additional Properties, but will grant the Trustee's request for a preliminary injunction prohibiting Warner from transferring the Additional Properties during the pendency of this litigation without further order of this Court.

### I.    Jurisdiction and Venue

The Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and venue is proper before this Court pursuant to 28 U.S.C. § 1409.

### II.    The Request for Prejudgment Attachment

The starting point in the Court's analysis is Federal Rule of Civil Procedure 64, which is applicable here pursuant to Federal Rule of Bankruptcy Procedure 7064, and provides that in a

---

[1] At the outset of the Hearing, an agreement was announced with respect to the Trustee's *Motion for Order Directing Appointment of Prejudgment Receiver for A-Advantage Auto Group, Inc. or, Alternatively, for Prejudgment Attachment* [Dkt. Nos. 10 & 11].  An order reflecting the agreement was entered on December 9, 2013 [Dkt. No. 24].

civil action "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of [a] potential judgment." FED. R. CIV. P. 64(a). Under Texas law, it is possible for a plaintiff to obtain a writ of attachment against a defendant's property to secure the plaintiff's debt before a court issues a judgment. *See E.E. Maxwell Co., Inc. v. Arti Decor, Ltd.*, 638 F. Supp. 749, 753 (N.D. Tex 1986). However, Texas courts have found a prejudgment writ of attachment to be a "harsh, oppressive remedy." *See, e.g., S.R.S. Wheels, Inc. v. Enlow*, 946 S.W.2d 574, 575 (Tex. App. – Fort Worth 1997, orig. proceeding). And, before issuing such an extraordinary remedy, a court must strictly apply the requirements of the Texas Civil Practice and Remedies Code. *In re Argyll Equities*, *LLC*, 227 S.W.3d 268, 271 (Tex. App. – San Antonio 2007, no pet.).

Under Section 61.001 of the Texas Civil Practice and Remedies Code, a writ of original attachment is available to a plaintiff in a suit if: "(1) the defendant is justly indebted to the plaintiff; (2) the attachment is not sought for the purpose of injuring or harassing the defendant; (3) the plaintiff will probably lose his debt unless the writ of attachment is issued; and (4) specific grounds for the writ exist under Section 61.002." TEX. CIV. PRAC. & REM. CODE ANN. § 61.001 (Vernon 1997). There are nine grounds under Section 61.002, at least one of which must be present before a prejudgment writ of attachment can be issued:

   (1) the defendant is not a resident of this state or is a foreign corporation or is acting as such;

   (2) the defendant is about to move from this state permanently and has refused to pay or secure the debt due the plaintiff;

   (3) the defendant is in hiding so that ordinary process of law cannot be served on him;

   (4) the defendant has hidden or is about to hide his property for the purpose of defrauding his creditors;

(5) the defendant is about to remove his property from this state without leaving an amount sufficient to pay his debts;

(6) the defendant is about to remove all or part of his property from the county in which the suit is brought with the intent to defraud his creditors;

(7) the defendant has disposed of or is about to dispose of all or part of his property with the intent to defraud his creditors;

(8) the defendant is about to convert all or part of his property into money for the purpose of placing it beyond the reach of his creditors; or

(9) the defendant owes the plaintiff for property obtained by the defendant under false pretenses.

*Id.* § 61.002.

Under Texas law, a plaintiff may obtain a writ of attachment by filing an affidavit (or offering other evidence) that satisfies each of the elements of Section 61.001 and establishes the amount that the plaintiff demands. *Id.* § 61.022. If granted, a writ of attachment "creates a lien from the date of levy on the real property attached, on the personal property held by the attaching officer, and on the proceeds of any attached personal property that may have been sold." *Id.* § 61.061.

Applying these requirements here, the Court concludes that the Trustee has failed in his proof. Specifically, the Trustee has failed to establish that Warner is "justly indebted" to the Debtor. That phrase has been interpreted to require an obligation to a pay a liquidated amount, either under an express or implied contract. *In re Argyll Equities*, 227 S.W. at 271. In other words, a writ of attachment is only available to a plaintiff where the plaintiff has made "a certain and liquidated demand . . . or [a demand] whose amount is reasonably certain." *In re Fredeman Litig.*, 843 F.2d 821, 826 (5th Cir. 1988); *see S.R.S. Wheels,* 946 S.W.2d at 575. If the amount of damages can only be ascertained by the fact-finder, a writ of attachment is inappropriate. *21 Turtle Creek Square, Ltd. v. N.Y. State Teacher's Pension Ret. Sys.*, 425 F.2d 1366, 1368-69 (5th

Cir. 1970). Moreover, a plaintiff cannot seek a writ of attachment based on damages arising in tort. *See S.R.S. Wheels*, 946 S.W.2d at 575.

As relevant here, the Trustee does not allege, nor has he proven, that Warner owes the Debtor a sum certain. Instead, the Trustee alleges that Warner owes "*at least* the amount of $260,000." Declaration of Scott M. Seidel ¶ 30 [Dkt. No. 13] (emphasis added). Moreover, as the Trustee acknowledges in the underlying Complaint, Warner has filed proofs of claims in the Debtor's bankruptcy case asserting rights to be paid in excess of $1,289,827.79. While the Trustee has objected to those claims (in the underlying Complaint and, alternatively, seeks to either equitably subordinate the claims or recharacterize the claims if allowable), it is possible that the Debtor owes Warner more than Warner owes the Debtor. The Court will be required to liquidate both amounts at trial – *i.e.*, the amount Warner owes the Debtor and the amount the Debtor owes Warner.

At this stage of the litigation and on this preliminary record, the Court simply cannot find that Warner is "justly indebted" to the Debtor.[2] Accordingly, the Trustee has failed in his proof and no prejudgment writ of attachment will issue.

### III. The Request for Preliminary Injunction

In the alternative to the issuance of a prejudgment writ of attachment, the Trustee requests that the Court enter a preliminary injunction, recordable against the Additional Properties, prohibiting any transfer of those properties during the pendency of this litigation. In considering this request, the Court must first determine whether the prejudgment relief requested by the Trustee runs afoul of the Supreme Court's ruling in *Grupo Mexicano de Dessarrollo S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 119 S. Ct. 1961 (1999). Notably, *Grupo Mexicano's*

---

[2] Given this finding, it is not necessary to analyze the balance of the requirements for the issuance of a prejudgment writ of attachment under Texas law.

holding is carefully circumscribed, providing that the general equitable powers of the federal courts do not include the authority to issue preliminary injunctions in actions solely at law: "This case presents the question whether, in an action for money damages, a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed." *Id.* at 310, 119 S. Ct. at 1964. In answer, the Court held "that the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages." *Id*. at 333, 119 S. Ct. at 1975. The Court was not presented with, nor did it choose to address, a situation in which equitable remedies were claimed. Accordingly, when equitable relief is involved in a case, the decision whether to issue a prejudgment injunction is controlled by *Deckert v. Independence Shares Corp.,* 311 U.S. 282, 61 S. Ct. 229 (1940) (holding that a district court had sufficient equitable powers to preliminarily freeze a defendant's assets in suits sounding in equity). *See United States ex rel. Rahman v. Oncology Associates P.C., et al.*, 198 F.3d 489, 496-97 (4th Cir. 1999). In an unpublished opinion, the Fifth Circuit recognized that *Grupo Mexicano* is not controlling precedent in actions in which equitable relief is sought. *Animale Group Inc. v. Sunny's Perfume, Inc.,* 256 Fed. Appx. 707, 709 (5th Cir. 2007) (distinguishing the holdings in *Grupo Mexicano* and *Deckert* and holding that "[b]ecause Defendants seek equitable relief, the district court was authorized to preserve the status quo by entering a limited asset freeze.").

Accordingly, when a plaintiff asserts a cognizable claim to specific assets of the defendant or seeks an equitable remedy involving those assets, a court may issue injunctive relief to preserve the status quo pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested. *Rahmman*,

198 F.3d at 496. "This nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit is essential to the authority of a district court in equity to enter a preliminary injunction freezing assets." *Id.* at 496-97.

Here, Counts 12-15 of the Complaint seek the avoidance and recovery of alleged fraudulent transfers made to Warner and other defendants under the Bankruptcy Code and the Texas Uniform Fraudulent Conveyance Act ("**TUFTA**"), and Count 24 "requests a finding and declaration that each of the Defendants, including Warner, is the alter ego of the Debtor and is liable to the Trustee jointly and severally with each other and with the Debtor for the just debts of the Debtor and the Estate." Here, although there is no allegation that the Additional Properties themselves were fraudulently transferred to Warner from the Debtor, the Trustee nonetheless claims an equitable interest in the Additional Properties through allegations that Warner and the Debtor, among others, are alter egos.[3]

"Under Texas law an alter ego remedy is one distinct method of piercing the corporate veil. Based upon equitable concerns, an alter ego remedy applies when there is such an identity of interest or unity between a corporation and an individual or other entity such that all separateness between the parties has ceased and a failure to disregard the corporate form would be unfair or unjust." *Matter of S.I. Acquisitions, Inc.*, 817 F.2d 1142, 1152 (5th Cir. 1987) (citations omitted).

As explained by the Fifth Circuit:

An alter ego allegation is shown from the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separate, the amount of financial interest, ownership and control the individual maintains over

---

[3] The Trustee also alleges that Warner is liable under a theory of single business enterprise. Complaint at ¶ 28. The Texas Supreme Court, however, has rejected single business enterprise as a theory to impose one corporation's liability on an affiliated entity. *See SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 456 (Tex. 2008).

>the corporation, and whether the corporation has been used for personal purposes. Alter ego's rationale is: if the shareholders themselves disregard the separation of the corporate enterprise, the law will also disregard it so far as necessary to protect individual and corporate creditors.

*Id.* at 1152 (citations and quotations omitted). "Texas' alter ego law thus rests upon an identity theory—the corporation and the control person or entity are considered to be a single entity." *Id.*

As proof of alter ego, a court may consider, among other things: (1) the payment of alleged corporate debts with personal checks or other commingling of funds, (2) representations that the individual will financially back the corporation, (3) the diversion of company profits to the individual for his personal use, (4) inadequate capitalization, and (5) other failure to keep corporate and personal assets separate. *See In re Arnette*, 454 B.R. 663, 667 (Bankr. N.D. Tex. 2011) (citing cases). However, the failure of a corporation to observe corporate formalities is no longer a factor in considering whether alter ego exists. TEX. BUS. ORGS. CODE Ann. § 21.223(a)(3) ("A holder of shares…or any affiliate of such a holder…may not be held liable to the corporation or its obligees with respect to: (3) any obligation of the corporation on the basis of the failure of the corporation to observe any corporate formality…."). In sum, the plaintiff must prove it is necessary to hold the individual liable, as opposed to the corporate form, in order to avoid a substantial injustice to the plaintiff. *Arnette*, 454 B.R. at 697 (citations omitted).

Federal Rule of Civil Procedure 65, as incorporated by Federal Rule of Bankruptcy Procedure 7065, enables courts to issue preliminary injunctions pending trial. The four elements a plaintiff must establish to secure a preliminary injunction are: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

To satisfy the first element of likelihood of success on the merits, the Trustee is not required to prove the estate's entitlement to summary judgment on his alter ego claim, but he must present a *prima facie* case in support of that claim. *Id.* at 596 (citing 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2948.3 (2d ed. 1995) ("All courts agree that plaintiff must present a prima facie case but need not show that he is certain to win." (footnote omitted)). At the Hearing, the Trustee elicited testimony from Warner that "in my [Warner's] mind, the company [the Debtor] and me were the same thing." Testimony of James Warner, Audio Hr'g Tr., December 3, 2013, at 9:57:31 a.m. Further, Warner testified as to properties he claimed he purchased personally, but that were titled in the names of other entities. *Id.* at 9:54:35 – 9:59:20; 10:04:13 – 10:05:48; 10:10:33 – 10:11:14. When questioned regarding properties and intercompany receivables, Warner would confuse the various entities and could not explain discrepancies between balance sheets, the schedules on file with the Court, and other documents. *Id.* at 10:14:40 – 10:15:20; 10:21:15 – 10:30:07.

In sum, and at least on the record made at the Hearing, the testimony showed that it simply did not matter to Warner which company owned which assets, since he ultimately owned all the companies. And, Warner's testimony made it abundantly clear to the Court that he did not, and does not, understand the legal separateness of the entities he owns, including the Debtor and himself. As such, it appears that money and property were freely transferred among the Debtor, Warner, and the other entities he owned without thought for the effect of those transfers on each entity's third-party creditors. And, most of the monies and properties transferred were from the Debtor to either Warner or another entity; rarely was money or property transferred to the Debtor. This evidence compels the conclusion that the Trustee carried his burden of proving a substantial likelihood of success on his alter ego claim against Warner.

To satisfy the second element of the preliminary injunction standard, the Trustee must demonstrate that, if the injunction is denied, irreparable harm would result. *Janvey*, 647 F.3d at 600 (citing *Holland Am. Ins. Co. v. Succession of Roy,* 777 F.3d 992, 997 (5th Cir. 1985)). In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages; however, the mere fact that economic damages may be available does not always mean that a remedy at law is "adequate." *Id.* (citations omitted). Again, on the basis of the December 3, 2013 evidence, the Court concludes that the Trustee carried his burden of proving a substantial threat of irreparable injury if the requested injunction is not issued. As described above, Warner freely transferred assets belonging to the Debtor or titled in the Debtor's name to suit his purpose, but often without monetary consideration or consideration of the impact of the transfer on the Debtor's third-party creditors. As relevant here, these prepetition actions cause grave concern that Warner is likely to transfer the Additional Properties without a sound business reason and without accounting for the proceeds in order to thwart the Trustee's attempts to have Warner's assets made available to pay the Debtor's (and Warner's) legitimate creditors should the Trustee ultimately prevail on his alter ego claim.

Third, weighing the balance of harm, the Court finds that the harm to the Trustee from failing to issue the requested injunction covering the Additional Properties would greatly outweigh any prejudice to Warner if the injunction were issued. Without the issuance of an injunction preventing Warner from transferring the Additional Properties during the pendency of this litigation, Warner will likely continue to make improper and/or inadequately documented transfers, which would dissipate his assets prior to trial without adequate business justification. Moreover, assuming Warner has the opportunity to seek a modification of the injunction after notice to the Trustee and a hearing, any prejudice to him from granting an injunction is greatly

diminished. While he will have to convince the Court that a transfer of one or more of the Additional Properties is appropriate, if there is a legitimate reason for such a transfer and the proceeds of the transfer can be protected on an interim basis, the Court is likely to permit the transfer to occur.

Finally, the Court believes that granting the preliminary injunction will not disserve the public interest, particularly in light of the evidence adduced at the Hearing concerning Warner's prepetition conduct. In fact, entry of a preliminary injunction will serve the public interest by preserving the status quo and preserving Warner's assets for the benefit of whomever is entitled to them after trial.[4]

Accordingly, it is hereby:

**ORDERED** that the Trustee's request for the issuance of a prejudgment writ of attachment against the Additional Properties is DENIED. It is further

**ORDERED** that the Trustee's request for a preliminary injunction is GRANTED and that Warner and any agent, attorney, employee, and/or representative acting on Warner's behalf are hereby prohibited from transferring the Additional Properties pending entry of a final judgment in this adversary proceeding unless the Court authorizes such transfer upon the filing of a motion by Warner to authorize the transfer (or to modify the injunction to permit the transfer) after notice to the Trustee and a hearing on any such motion. It is further

**ORDERED** that the Trustee is hereby authorized, in his discretion, to file a certified copy of this Memorandum Opinion and Order in any filing or recording office in any jurisdiction in which the Additional Properties are located as evidence of the injunction granted herein.

### END OF MEMORANDUM OPINION AND ORDER ###

---

[4] Given these findings and the Court's determination to issue a preliminary injunction under Federal Rule of Civil Procedure 65, it is not necessary for the Court to analyze the Trustee's request for an injunction under TEX. BUS. & COM. CODE ANN. § 24.008(a)(3)(A).